**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

NOV 2 4 2009

|   |   |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | )   Criminal Action No. 1:09-cr-150 |
|  | ) |
| DEREK FRANKLIN HICKS, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the government's request for an order of restitution against Defendant Hicks pursuant to 18 U.S.C. § 2259. This Court held a hearing on the matter on September 11, 2009.

For the reasons that follow, the Court hereby ORDERS Defendant Derek Franklin Hicks to pay restitution in the amount of $3,525.00 to the victim "Vicky."

### I.    Facts

The victim in this case, who will be referred to simply as "Vicky" for the sake of her anonymity, is the subject of a series of pornographic movies and photographs which have been widely circulated across the internet. These images depict Vicky's biological father sexually abusing her at the ages of 10 and 11 years old. The abuse initially went unreported, as Vicky kept her father's acts a secret for several years before disclosing them to her mother in late 2005. Authorities arrested her father and charged him for the acts later that year.

In early 2006, Vicky discovered signs of pornographic material on a computer her father had made for her, and it was only then that local police discovered that her father

had photographed and videotaped the abuse and saved the images on the computer. After

her father posted bond and disappeared, Vicky's story appeared on "Americas Most

Wanted." Upon viewing the episode, a police officer in Canada recognized Vicky as the

subject of a heavily-downloaded series of child pornography known as the "Vicky series"

that had been shared extensively across the internet. Though her father has since been

arrested and sentenced to a term in prison, the widespread proliferation of the "Vicky

series" continues today.

The Defendant in the instant case, Derek F. Hicks ("Hicks"), pled guilty on May

1, 2009 to attempted receipt of child pornography, in violation of 18 U.S.C. §

2252A(b)(1). Stored on Hicks' computer were, *inter alia*, two movies and two still

photographs from the "Vicky" series. This Court imposed a sentence of 60 months

imprisonment followed by an additional 10-year term of supervised release.[1]

## II.    Burden of Proof

The government bears the burden to prove that restitution is proper under 18

U.S.C. § 2259 by a preponderance of the evidence. *See United States v. Rapplinger*, 2007

WL 3285802 at *3 (N.D. Iowa Oct. 9, 2007); *U.S. v. Crandon*, 173 F. 3d 122, 126 (3rd

Cir. 1999).

## III.    Discussion

### a.    Restitution Generally Pursuant 18 U.S.C. § 2259

---

[1] Defendant signed a plea agreement in which he indicated his understanding that "[t]he maximum penalties for this offense are a mandatory minimum term of five years of imprisonment and a maximum term of twenty years of imprisonment, a fine of $250,000.00, full restitution, a special assessment, and supervised release for five years to life." The sentence imposed was at the high end of the guideline range for this defendant.

The Mandatory Restitution for Sex Crimes section of the Violence Against

Women Act of 1994, codified at 18 U.S.C. § 2259 ("§ 2259"), specifically provides for

restitution to victims of sexual exploitation and abuse.[2]

Section 2259 directs that "the court shall order restitution for any offense under

[Chapter 110]." 18 U.S.C. § 2259(a). Within the scope of Chapter 110 are the offenses

of sexual exploitation of children (§ 2251), selling or buying of children (§ 2251A),

certain activities relating to material involving sexual exploitation of children (§ 2252),

and other related offenses. As noted above, Hicks pled guilty to violating § 2252A(b)(1).

The Fourth Circuit has yet to interpret § 2259.

### b. Restitution is "Mandatory" Under 18 U.S.C. § 2259

---

[2] Section 2259 provides:

(a) In general.-Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.
(b) Scope and nature of order.-

(1) Directions.-The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).

(2) Enforcement.-An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.

(3) Definition.-For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for-

(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) attorneys' fees, as well as other costs incurred; and
(F) any other losses suffered by the victim as a proximate result of the offense.

(4) Order mandatory.-

(A) The issuance of a restitution order under this section is mandatory.
(B) A court may not decline to issue an order under this section because of-
(i) the economic circumstances of the defendant; or
(ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.

(c) Definition.-For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

A plain reading of § 2259 indicates that restitution in this case is mandatory. Section 2259(b)(4)(A) ("[t]he issuance of a restitution order under this Section is *mandatory*.") (emphasis added).[3]  Accordingly, the Court is obligated to enter an award of restitution, provided Vicky is properly considered a "victim" of Hicks' offense under the statute.

### c.  Determining the Identity of a "Victim" Under §2259

A "victim" under § 2259(c) is defined as an "individual harmed as a result of the commission of a crime under [Chapter 110]." *Id.* Hicks pled guilty to attempted receipt of child pornography, a crime under Chapter 110.  Unlike those who actively participate in the production of child pornography, Hicks was an "end user" of the material.  Thus, Hicks and others similarly-situated might contend that the children depicted in the pornography are not "victims" of their offense of conviction.  This Court rejects any such assertion.

Receiving and viewing child pornography inflicts an injury upon the child depicted by violating his or her privacy, contributing to a cycle of abuse, and perpetuating a market for the sharing of the material. *See, e.g. U.S. v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters").  Indeed, the legislative history behind criminalizing this conduct in § 2252 indicates Congress shared "a deep and abiding concern for the health and welfare of the children"

---

[3] Section 2259 also provides that "[t]he order of restitution under this Section *shall* direct the defendant to pay the victim the full amount of the victim's losses as determined by the court pursuant to paragraph (2)." §2259 (b)(1) (emphasis added).  Further demonstrating the statute's compulsory nature, paragraph (b)(2) provides that "[a]n order of restitution under this Section *shall* be issued and enforced in accordance with Section 3664 in the same manner as an order under Section 3663A." § 2259 (b)(2) (emphasis added).

4

and sought to enact legislation "to protect and benefit such children." S. Rep. No. 95-438, at 41 (1977).[4] Further, Congress explicitly recognized that a "child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography... It is the fear of exposure and the tension of keeping the act secret that seems to have the most profound emotional repercussions." S. REP. 104-358, 14 (1996) (quoting *New York v. Ferber*, 458 U.S. 747, 760 (1982)).[5]

Evidence submitted by the government further affirms the specific and cognizable harm Vicky suffers each time a video depicting her abuse is viewed. Dr. Randall L. Green, Ph.D., a clinical psychologist who evaluated Vicky, attests that Vicky responded to the discovery of the videos with "dissociation" and that Vicky's anxiety "ran rampant" with the fear that "any man who looked at her must have viewed her downloaded video." Green Rep. at 25. Dr. Green chronicles the host of effects that ensued, including night terrors, a marked drop in academic performance at school, alcohol abuse, depression, chronic insomnia, and continuing dissociation with even those closest to her. *Id.* at 3-6.

---

[4] To this end, case law in the context of grouping offenses under the Sentencing Guidelines is instructive to the extent that it clearly recognizes that children depicted in child pornography are the victims of the pornography's viewers. A number of other Circuits have evaluated whether the child depicted in such pornography is the "primary victim" in cases of distributing or possessing child pornography. *See, e.g. U.S. v. Boos*, 127 F.3d 1207, 1208 (9th Cir. 1997) (holding that the victim of the crime of distributing child pornography is the individual child depicted in the image and society at large in the sentencing guideline context ); *United States v. Sherman* 268 F.3d 539, 544 (7th Cir.2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). *United States v. Tillmon*, 195 F.3d 640, 643 (11th Cir.1999); *United States v. Norris*, 159 F.3d 926, 930 (5th Cir.1998) (finding end-user continues to harm children depicted and "the mere existence of child pornography represents an invasion of the privacy of the child depicted"); *United States v. Hibbler*, 159 F.3d 233, 236-37 (6th Cir.1998).

     The Court notes that this Circuit has acknowledged that "the primary victim under Section 2252(a) is *society in general*, with the minor a secondary victim." *U.S. v. Toler*, 901 F.2d 399, 403 (4th Cir. 1990) (emphasis added). Nonetheless, the Court maintains that § 2259 requires only that Vicky be a *victim* (and not a "primary" victim), and thus today's order of restitution falls in line with the limited guidance available in our Circuit in this context. So long as Vicky is in fact a victim of Hicks' offense, the *degree* of her victimization does not prevent an award of restitution under §2259.

[5] *See also* Alexandra Gelber, *Response to* A Reluctant Rebellion, U.S. Dept. of Justice, July 1, 2009.

Vicky herself attests in her victim impact statement to the continuing effect of knowing

the images are circulating across the world:

> "This knowledge has given me paranoia. I wonder if the people I know
> have seen these images. I wonder if the men I pass at the grocery store
> have seen them. Because the most intimate parts of me are being viewed
> by thousands of strangers and traded around, I feel out of control…It feels
> like I am being raped by each and every one of them."
> Vict. Imp. Stmt. at 1.

The Court finds that the government has established by a preponderance that

Vicky is an individual harmed as a result of Hicks' commission of a crime under Chapter

110, and thus, Vicky meets the definition of a "victim" under § 2259.

### d. "Causation" Under § 2259

In surveying those of our sister districts which have grappled with requests for

restitution in similar cases, it is apparent that the issue of causation remains the most

contested point. While highly interrelated with the issue of defining "victim" discussed

above, *supra* at § III c., ascertaining the specific harm which can be tied to Hicks'

conduct and how to fashion a specific amount of restitution is admittedly a difficult task

under the statute.

### 1. Is a Showing of Causation Required?

A showing of causation is not specifically enumerated in the statute as a

prerequisite to an award of restitution. Therefore, if a requirement of causation is to be

drawn from the statute, it must be implied from the statute's definition of a "victim" ("the

individual harmed *as a result of* a commission of a crime under this chapter") and in the

types of harm meant to be redressed (the enumerated categories plus any "other losses

6

suffered by the victim as *a proximate result* of the offense"). *Id.* at § 2259(b)(3) & (c) (emphasis added).

Case law from other jurisdictions is legion in supporting a reading of §2259 containing a causation requirement. *See, e.g. United States v. Crandon,* 173 F.3d at 125-26; *United States v. Danser,* 270 F.3d 451 (7th Cir. 2001); *United States v. Laney,* 189 F.3d 954, 965 (9th Cir.1999); *United States v. Doe,* 488 F.3d 1154, 1160 (9th Cir. 2007). However, none of these circuits have held that restitution under § 2259 carries a requirement of causation "approaching mathematical precision." *Id.* Consequently, the Court joins those jurisdictions which read §2259 as containing a causation requirement.

As Vicky is a "victim" under § 2259, the Court has already determined Hicks to be the factual (but-for) cause of harm to Vicky. The Court, however, does not turn a blind eye toward the persisting difficulty in identifying the particular harm Hicks caused Vicky and how much he should recompense her as a result.

### 2.  Does § 2259 Require a Showing of *Proximate* Causation?

As the government notes in its memorandum, § 2259 does not clearly demand a "proximate cause" standard. The statute does, however, specifically enumerate several categories of harm meant to be accounted for in addition to any "other losses suffered by the victim as *a proximate result* of the offense." 18 U.S.C. § 2259(b)(3)(emphasis added). Accordingly, the statute plainly does not contemplate compensation for every injury incurred which is merely related to the underlying offense, no matter how attenuated.

For instance, as the Ninth Circuit observes, a "comparison of the language of the [Sentencing] Guidelines and Section 2259 shows that a court may hold a defendant responsible for a broader range of harms connected with the defendant's crimes when it

7

calculates a *sentence* than it may consider when it crafts a *restitution* order." *U.S. v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999)(emphasis added). Accordingly, a number of courts have determined that § 2259 contains something akin to a tort-like proximate cause requirement. *See, e.g. United States v. Crandon*, 173 F. 3d 122, 126 (3rd Cir. 1999); *Laney*, 189 F. 3d at 965; *Doe*, 488 F. 3d at 1154; *Julian*, 242 F. 3d at 1245.

Thus, as our sister court in the Eastern District of California notes, "Section 2259 leaves the court in a legal quandary: the court must award restitution and the government must show the harm caused by [the defendant], but it is difficult to determine the amount of harm caused by [the defendant]." *Ferenci*, 2009 WL 2579102 at *4. That such a showing is difficult, however, does not relieve this Court of its duty to comply with the statutory command of §2259. Moreover, the Court declines to refuse § 2259's mandate– as several other districts have recently done – by selectively reading §2259 to obfuscate its apparent intent "to pay full restitution to the identifiable victims of their crimes." *United States v. Croxford*, 324 F. Supp.2d 1230, 1249 (D. Utah 2004).

Hicks argues that "[a]ny loss suffered by the victim is the direct result of the crime committed by the victim's father, rather than the Defendant." Def. Response at 2. While it is without question that Vicky's father harmed her, his culpability does not insulate Hicks from shouldering the responsibility for his own separate injurious conduct. Further, the Court finds particularly unavailing Hicks' argument that by asking authorities to keep her apprised of the cases that arise involving her series, Vicky has somehow "chosen to live in her dark past and keep painful memories renewed." Def. Response at 2. Hicks goes on to argue that his crime "could not have caused any loss, whatsoever, to the victim, had the victim not chosen to keep herself informed of

8

subsequent offenders viewing the offensive videos and photographs." *Id.* Without dwelling on Hicks' conflated sense of blameworthiness, this Court rejects any assertion that causation is in some way negated by Vicky's decision stay informed in these matters.

Turning again to the record presently before the Court, there is ample evidence that when Hicks sought to receive the pornographic images depicting Vicky's abuse, his actions presented a sufficiently proximate tie to her ongoing injuries to justify an award of restitution under § 2259. Vicky and those closest to her attest, first-hand, to the ongoing trauma she suffers each time the Vicky series is traded and viewed. And thus, in this Court, like "every circuit to consider the causation requirement of Section 2259, a rule of reasonableness is applied." *U.S. v. Pearson*, 2009 WL 2383025 at * 3 (N.D.N.Y. July 30, 2009) (citing *Doe*, 488 F.3d at 1180). From the record before the Court, including the report of Dr. Green, discussed *supra* § III. c., the causation element of § 2259 is met in this case.

### e.  Amount of Restitution

Section 2259(b)(1) commands that the Court direct Hicks to pay Vicky "the *full amount* of the [Vicky]'s losses as determined by the court pursuant to paragraph (2)." §2259 (b)(1). Paragraph (2) directs the Court to 18 U.S.C. § 3664, which generally outlines the procedure for issuing restitution. Section 2259 specifically enumerates categories of injury for which the offender must pay restitution. To that end, §2259(b)(3)(a) provides for reimbursement of "medical services relating to physical, psychiatric, or psychological care" incurred by the victim. There is also strong authority which endorses an award of the costs of future counseling expenses. *See U.S. v. Pearson*, 570 F.3d 480, 487 (2nd Cir. 2009); *Laney*, 189 F.3d at 966-67; *Danser*, 270

9

F.3d at 455; *Doe*, 488 F.3d at 1154; *Crandon*, 173 F.3d at 122; *Julian*, 242 F.3d at 1245; *Estep*, 378 F.Supp.2d at 763.

The Court is well aware that Hicks possesses limited financial resources. The Court, however, is not permitted to consider a defendant's economic circumstances in setting an amount of restitution under the statute, nor is the Court permitted to decline an order of restitution because the victim is due to receive compensation from insurance or "any other source." *Id.* at § 2259 (b)(4)(B)(i-ii).[6]

The court may apportion liability if it finds more than one defendant has contributed to the loss of the victim. 18 U.S.C. 3664(h).[7] In the present case, Vicky, through counsel, submits a "Summary of Expenses to be Reimbursed" totaling $146,399.15. This figure is the sum of the $17,874.15 already incurred as an expense for psychological evaluation of Vicky, the projected $128,000 worth of future counseling expenses Vicky will require, and $525.00 in attorney's fees for preparation of the restitution demand.

Dr. Green evaluated Vicky in April of 2009 and worked for a number of weeks thereafter to create a 34-page report detailing her findings. In his report, Dr. Green concludes that Vicky suffers from two categories of trauma: "Type I" which stemmed from the direct abuse by Vicky's father and "Type II" abuse which stems from the "knowledge of the dissemination and proliferation of the images of her at her times of

---

[6] The Eastern District of California recently awarded restitution to the same victim ("Vicky"). In so doing, the court recognized the potential for a "windfall" scenario if a number of courts were to award restitution to the same victim, but pointed to this "any other source" language in § 2259(b)(4)(B)(ii) in finding that argument unpersuasive. *U.S. v. Ferenci*, 2009 WL 2579102 at *6 (E.D. Cal. 2009).

[7] As noted, §2259(b)(2) provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." In turn, 18 U.S.C. § 3664(h) provides: "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."

greatest humiliation and degradation." Dr. Green Report at 6. Dr. Green goes on to explain that "[a]lthough it may not be as acute or extreme in nature, Type II trauma represents a chronic, toxic condition, the knowledge of which continuously works like corrosive acid on the psyche of the individual." *Id.*

As a result, Dr. Green concludes that Vicky exhibits clinical symptoms of a variety of diagnoses which he presents in a multi-axial format in accordance with the *Diagnostic and Statistical Manual of Mental Disorders (DSM-V)*. *Id.* at 5. These diagnoses include "Posttraumatic Stress Disorder… Insomnia…Dissociative Disorder…[and] Eating Disorder NOS" to name a few. *Id.* Dr. Green points to the "probable indefinite course of the Type II stressor" and concludes that Vicky "will likely require and be able to benefit from therapy into her mid-fifties, with declining frequency." *Id.* at 9.

Dr. Green's report, coupled with the impact statements of Vicky, her mother, and her stepfather, convince this Court by more than a preponderance that Hicks caused Vicky real and identifiable injuries which now require clinical therapy to redress. Accordingly, this Court is persuaded that Dr. Green's estimate of the $128,000.00 required for Vicky to receive this therapy is sufficiently accurate and reasonable to justify an award under § 2259. Further, the Court finds that the itemized bill submitted along with Dr. Green's report is an accurate reflection of the cost of Dr. Green's fee for his interview of Vicky and subsequent preparation of his May 22, 2009 report. Thus, this Court has a sufficient basis to make a "reasonable estimate" of the amount that reflects the full loss of the victim due to Hicks' acts.

**f.  Joint Liability**

11

Having found there to be a sufficient basis to estimate the amount of Vicky's losses, however, leaves the Court with the decision of whether and how the Court must apportion liability among those already convicted of similar offenses against Vicky, or those yet to be prosecuted. To the best of this Court's knowledge, Vicky has already been awarded at least $ 19,000 in restitution from "end users" of the Vicky series, and further awards are likely forthcoming.[8]

The Court is aware of the approach taken by other district courts in similar restitution cases, some of which have awarded the full amount, *see, e.g. U.S. v. Staples*, 09-CR-14017 (August 10, 2009 S.D.FL), and others which looked to §3664(h) as a basis for apportioning liability in the court's discretion. *See, e.g. Ferenci*, 2009 WL 2579102 (August 19, 2009 E.D. Cal.).

As the government advises, several other cases involving the "Vicky" series are currently pending before district judges in this district and in other jurisdictions. The government essentially takes the posture that these numerous defendants should simply sort it out amongst themselves. However, coordination of any potential future awards to avoid unjustly enriching Vicky is unworkable, and there is no mechanism of which the Court is aware – in the U.S. Probation Service or otherwise – which is capable of managing such a scenario.

---

[8] These cases are: *U.S. v. Lynn*, 08-CR-000262-001 (July 23, 2009 E.D. Cal.) (awarding $750.00); *U.S. v. Ochoa*, 08-CR-000262-001 (7/23/09 E.D.Cal.) (awarding $250.00); *U.S. v. Monk*, 2009 WL 2567831 at *6 (August 18, 2009 E.D.CA) (awarding $3000); *U.S. v. Terry Zane*, 2009 WL 2567832 at *6 (August 19, 2009 E.D. Cal.) (awarding $3000); *U.S. v. Renga*, 2009 WL 2579103 at *6 (August 19, 2009 E.D. Cal.) (awarding $3000); *U.S. v. Ferenci*, 2009 WL 2579102 at *6 (August 19, 2009 E.D. Cal.) (awarding $3000); and *U.S. v. Woodin*, 09-CR-044 (August 21, 2009 E.D.Cal.)(awarding $1,000); *U.S. v. Hyson*, 09-CR-00305 (November 13, 2009 E.D. Va.)(awarding $5,000).

In the end, the Court finds that the amount of $3,000, the amount identified as the correct restitution figure in several of the previously-decided "Vicky" cases,[9] plus attorney's fees, is appropriate. The Court believes that at least fifty defendants will be successfully prosecuted for unlawfully possessing or receiving the Vicky series, given the numbers prosecuted to date. If restitution orders of $3,000 per case result, Vicky will be compensated in full.[10] Like the Eastern District of California, this Court is confident that the amount of harm Hicks actually inflicted upon Vicky exceeds the amount awarded, and thus Hicks has little to protest in the way of due process or otherwise.

## IV.    Conclusion

For the foregoing reasons, the government's request for restitution is hereby GRANTED. Derek F. Hicks shall pay restitution in the amount of $3,525.00 to the victim Vicky which includes: (i) $3,000.00 toward Vicky's counseling expenses, past and future; and (ii) $525.00 in attorney's fees. An appropriate order shall issue.


Alexandria, Virginia                                          /s/
November 24, 2009                                     _____
                                                      Liam O'Grady
                                                      United States District Judge

---

[9] See Monk, 2009 WL 2567831 at *6; Zane, 2009 WL 2567832 at *6; Renga, 2009 WL 2579103 at *6; Ferenci, 2009 WL 2579102 at *6.

[10] Further indicating that the Court's restitutionary award falls within an acceptable range, another Judge in this District recently ordered restitution in the amount of $5,000 for an offender convicted of possession of the "Vicky" series, in violation of 18 U.S.C. § 2252A(a)(5). See U.S. v. Hyson, 09-CR-00305 (November 13, 2009 E.D. Va.). All parties consented to the amount of $5,000 before the Court's imposition of the order of restitution.